By the Court—Woodruff, J.
We think the Referee erred in holding that there is any. foundation whatever for this action. Taking the facts as strongly in the plaintiff’s favor as any evidence in the cause will warrant, Ebenezer Cook the partner of the defendant’s son, had transferred to his father, Thomas Cook, the property of the firm by a conveyance which was fraudulent and void as against the creditors of the firm, and which was also void as against the defendant’s said son (the partner.) The property so transferred consisted of notes of one McCoy. The defendant insisted that by receiving the property so transferred, Thomas Cook had in fact received property belonging to his son and in effect received what the son had contributed as capital, which capital had been advanced to the son by him, the defendant, and making that claim he demanded that compensation should be made to himself and threatened a suit if it was not made.
Under the influence of this demand, Thomas Cook gave him an order on B. B. Sherman for two of the notes made by McCoy.
The evidence to our minds shows, by a decided preponderance, that when the demand was made and the order .was given and received, the defendant had refused to take any part of the property which had belonged to the firm and did not intend to receive any such property, and was not aware when he took the order, that the notes it was proposed be should receive from Sherman were the property of the firm; but the Referee has found otherwise: and let it therefore be assumed that he knew that the McCoy notes were the identical notes which had been fraudulently transferred to Thomas Cook.
It is however plainly shown that he did not know that they bore the indorsement of Ebenezer Cook, the fraudulent partner.
He presented the order. One noté was given to him and on discovering that it bore the indorsement óf Ebenezer Cook, he returned by the first conveyance to Thomas Cook, and demanded other notes instead of those mentioned in the order, and Thomas Cook gave him his own notes.
*121 It is not and cannot be claimed that if on the first interview Thomas Cook had paid him two thousand dollars or any other sum in money, the defendant would have been in any manner liable to the present plaintiff. It would have béen a payment of money which Thomas Cook was not bound to make, but which he would be deemed to have voluntarily made, and in which neither the plaintiff nor any creditor of Ebenezer Cook had any interest. :
So if Thomas Cook had at that first interview delivered to him his own notes indorsed by his son-in-law, the same notes which he did give him at the second interview, it would have been equally clear that the plaintiff had no interest therein, and the creditors whom he represents would have had no concern therewith. -
So if the defendant had found the McCoy notes in the hands of Thomas Cook and had agreed to accept two of them, but on their being produced and handed to him he had examined them, and finding' the name of E.- Cook upon them, refused to accept them in satisfaction of the claim he was urging, and thereupon Thomas Cook’s notes had been given to him, -there would not have been the' slightest ground to claim that he was liable as for disposing of the McCoy notes to his own use, and yet this would have been as literally exchanging the McCoy notes with Thomas Cook as what he did do was.
So if the defendant when the one note, for which he is held liable, was handed to him by Mr. Sherman, had, on seeing the name of E. Cook, handed it back to him, and then gone to Thomas Cook and obtained his notes in lieu thereof, it would be equally clear- that the defendant is not liable.
The supposed ground of liability becomes therefore very narrow. If he had left the note with the agent of Thomas Cook, he would not be liable, but because he carried it to the principal, Thomas Cook himself, he is liable as for a conversion to his own use.
We are not able to perceive that any such liability results from his act. For all the purposes of holding the custody of the note, Sherman and Cook may properly be regarded as' one. Sherman evidently held the note subject to Cook’s order. The defendant, producing such an order, received the note-and carried it to Cook. The distance which at the time separated Cook and *122 Sherman, rendered the interval between the time when the defendant took the note into his hand and the time when he delivered it to Cook, several hours, but that can make no difference, he went by the first conveyance. Suppose that on receiving the order from Cook he had only to' go into the next room, and obtaining the note and perceiving the name of E. Cook upon it, he had returned with it to Cook and refused to accept it, we think it plain it would have involved him in no liability.
It does not appear that there ever was a moment, after he was informed of the true tenor and character of the note, at which he consented to make it his own property; and he certainly did not use it in any proper sense for his own benefit. Instead of converting it to his own use, he returned it to the party who held it and who had the legal title to it as against himself, and as against Ebenezer Cook, the indorser, and Robert McCoy, the maker.
We are not willing to carry the idea of constructive conversion so far as has been done in this case. We think the defendant has been charged with the amount of a note which, according to the only sensible view of the transaction, he never accepted or consented to receive as his own, and in respect to which he did nothing amounting to a conversion.
It is proper to add that the Referee erred in holding that because the testimony of the defendant in answer to the questions put by his own counsel had been reduced to writing, that therefore the defendant’s counsel could not waive the reading of any answer which he did not wish to have read. If the testimony was relevant to any issue in the cause and tended to prove a fact to which the defendant’s statement was competent evidence, the plaintiff was at liberty to read it. (Forrest v. Forrest, 6 Duer, 102.) In this respect the deposition of the plaintiff is to be treated as the deposition of any witness would be when taken on commission or otherwise.
A party who has caused such deposition to be taken does not necessarily, by offering parts of it in evidence, bind himself to read it all, or make answers which are irrelevant or incompetent admissible.
It is not obvious upon what ground the Referee excluded evidence that proceedings supplemental to execution had been *123 taken- against McCoy, and no property was discovered. The action was to recover the value of a promissory note of said McCoy, and it is for that value the Referee gave the plaintiff judgment. Evidence was given of judgments against McCoy, and of the return of executions unsatisfied, some due before and some after the day of the maturity of such note. If this was admissible, in order by proof of the exhaustion of all legal remedies against him to show that he was insolvent, and the note of little or no value, it is not easy to see why evidence that further equitable remedies had been exhausted without discovering any property, was not competent.
The judgment should, we think, be reversed, and a new trial ordered. Costs to abide the event.
Ordered accordingly.